IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DAVORIC PENTEZ TILMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No: 5:15-CV-0085-MTT-CHW |
| Warden ERIC SELLERS, et al, | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| Defendants | : | BEFORE THE U. S. MAGISTRATE JUDGE |

## ORDER & RECOMMENDATION

Plaintiff **Davoric Pentez Tilman**, an inmate currently confined at Hancock State Prison in Sparta, Georgia, has filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. Plaintiff also seeks to proceed in this case without pre-payment of the Court's filing fee and has moved for the appointment of counsel. For those reasons stated herein, Plaintiff's Motion to Proceed *in forma pauperis* is **GRANTED**. After conducting a preliminary review of Plaintiff's Complaint, the undersigned also finds his allegations sufficient to allow claims against Defendants **Woodson**, **Johnson**, **Jackson**, **Trimble**, and **Ivey** to go forward. It is **RECOMMENDED** that all other claims, as discussed herein, be **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). Plaintiff's Motion for Appointment of Counsel is **DENIED**.

    I.    <u>**Motion to Proceed *in forma pauperis***</u>

Plaintiff has filed a Motion to Proceed *in forma pauperis*. Based on his submissions, the undersigned finds that Plaintiff is currently unable to pre-pay the Court's $350.00 filing fee. His Motion (Doc. 2) is thus **GRANTED**. *See* 28 U.S.C. § 1915(b). This does not mean that the filing fee is waived. Plaintiff is still obligated to pay the full balance of the filing fee using the payment plan described in § 1915(b) and ordered herein, *see infra* p.14. For this reason, the Clerk

of Court is **DIRECTED** to send a copy of this Order to the warden or business manager of the facility in which Plaintiff is currently confined.

## II.     Motion for Appointment of Counsel

Plaintiff has also moved for the appointment of counsel. Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In this case, Plaintiff has filed a § 1983 *pro se* complaint on a standard form. The Court is now required to review the Complaint to determine whether Plaintiff's allegations state a colorable legal claim. This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel. The facts stated in Plaintiff's Complaint are not complicated, and the law governing Plaintiff's claims is neither novel nor complex. The need for counsel also cannot be properly evaluated until after the undersigned has both conducted a review of Plaintiff's Complaint *and* considered any responsive pleadings.

Plaintiff's Motion (Doc. 3) is accordingly **DENIED**. The Court will, however, entertain a renewed motion if it later becomes apparent that counsel should be appointed in this case.

## III.    Preliminary Screening of Plaintiff's Complaint

### A. Standard of Review

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).

2

*Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed" by the court. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed liberally and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted. *See* § 1915A(b)(1). To state a claim, a complaint must include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plaintiff must also allege sufficient facts to "raise the right to relief above the speculative level" and create "a reasonable expectation" that discovery will reveal evidence to prove a claim. *Id.* "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### B.  Plaintiff's Claims

The present action arises out of Plaintiff's confinement in the administrative segregation (Tier II) unit at Hancock State Prison. In his Complaint, Plaintiff alleges that, on September 27, 2014, pepper spray was maliciously discharged into his cell by Sergeant Johnson (at the direction of Lieutenant Woodson and with the assistance of Officer Jackson). Plaintiff suffered adverse effects as a result of the spray, and his clothing and linens were "saturated" with chemical agent. The officers, however, allegedly refused to take Plaintiff out of his cell for immediate medical care, and Lieutenant Woodson would not allow him to change his clothing or linens for two days. Two nurses did come to Plaintiff's cell to evaluate his condition within an hour of his exposure to the spray. They stated that Plaintiff would be okay, but they were not permitted to remove him from his cell because of "security concerns." Plaintiff later filed "sick-call" requests complaining

3

of problems with his eyes. He was not seen until October 27, 2014, and was at that time again told that the effects of the spray would eventually "wear off." His subsequent sick calls were ignored or denied in writing.

Plaintiff filed a grievance on September 29, 2014. A month later, Plaintiff informed Unit Manager Trimble and Deputy Warden Ivey that he feared for his safety and requested protective custody. His request was denied, and Plaintiff filed another grievance. Four days later, Plaintiff was reassigned to "Phase I" of the Tier II program by Warden Hill without conducting a "face-to-face" hearing as required by the prison's "standard operating procedure." Plaintiff successfully appealed this classification on December 15, 2014, and was moved back to "Phase II" the following day. Plaintiff, however, believed that he should have been moved to Phase III, not Phase II. He wrote letters to Warden Sellers, whose only reply was "see counselor," and Unit Manager Trimble apparently refused to hear Plaintiff's complaint. Plaintiff then spoke with Warden Sellers personally on December 25, 2014. Sellers later assured Plaintiff that he had spoken with Unit Manager Trimble and that Trimble was going to move Plaintiff. Plaintiff was not moved, however. He then spoke with his counselor, and she advised Plaintiff that "as long as you keep filing these grievances, they are going to keep you on this Phase." As a result of his confinement in Phase II, Plaintiff is denied the ability to take classes necessary to be considered for parole and restricted from receiving or possessing pictures, books, newspapers, and magazines.

At the time of filing, on or about February 24, 2015, Plaintiff was still housed at Phase II, had not received any response from his last grievance, and had been denied his 90-day classification review due on January 29, 2015. Plaintiff thus filed the present lawsuit against Warden Sellers, Deputy Warden George Ivey, Lieutenant Arthur Woodson, Unit Manager Tommy Trimble, Deputy Warden Derrick Hill, Sergeant Johnson, Officer Jackson, and two "Jane Doe"

nurses under § 1983, for violation of his First, Eighth, and Fourteenth Amendment rights.

1. Eighth Amendment Excessive Force & Deliberate Indifference Claims

Plaintiff first attempts to bring claims based on the discharge of pepper spray into his cell and his continued exposure to those toxins thereafter. Plaintiff's claims arising out of the use of pepper spray are construed to be Eighth Amendment excessive force claims. Plaintiff's assertion that Lt. Woodson refused to decontaminate him for two days is, however, better couched as a deliberate indifference claim. *See Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 766 (11th Cir. 2014). Either way, Plaintiff's allegations, when liberally construed and read in his favor, are sufficient to allow these Eighth Amendment claims against Defendants **Lt. Woodson**, **Sgt. Johnson** and **Officer Jackson** to go forward for further factual development.

2. Eighth Amendment Claims for Denial of Medical Care

Plaintiff has also attempted to bring Eighth Amendment claims against Lt. Woodson, Sergeant Johnson, Officer Jackson, and the Jane Doe nurses for denial of medical care. To state an Eighth Amendment claim for inadequate medical care, a plaintiff must allege facts to show (1) that his medical need was objectively serious; and (2) that the defendant acted with deliberate indifference to his serious need. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Plaintiff's allegations fail to satisfy the first prong. Nothing in his Complaint suggests that he had an "objectively serious medical need." Plaintiff alleges that he experienced nausea, shortness of breath, dizziness, and a burning sensation in his eyes immediately after his exposure to the pepper spray. The transitory effects of pepper spray, however, do not necessarily constitute a serious medical need. *See Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007). *See also Wade v. Colaner*, No. 06–cv–3715 (FLW), 2009 WL 776985, at *10–12 (D.N.J. Mar. 20, 2009) ("the normal effects of pepper spray on a person, i.e. burning, are not of the kind to constitute a

5

serious medical need"). In this case, Plaintiff's conditions apparently resolved without treatment, and though Plaintiff experienced eye irritation for some period of time afterwards, he has not alleged facts to show that any injury to his eyes was so serious that would be diagnosed by a doctor as mandating treatment. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) ("[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Yet, even if the Court were to presume that Plaintiff's injuries were sufficiently serious to invoke Eighth Amendment protections, Plaintiff also fails to allege sufficient facts to show that Defendants acted with deliberate indifference – i.e., that they were subjectively aware of "a risk of serious harm" to Plaintiff and disregarded that risk through "conduct that is more than mere negligence." *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). According to the Complaint, Defendants believed Plaintiff was exhibiting the expected response to pepper spray and was seen by the "Jane Doe" nurses within an hour of his exposure. At that time, the nurses found him to be "okay," and there is no suggestion that their response would have been different if Plaintiff was taken for medical treatment immediately after his exposure. Plaintiff also does not allege that the named defendants in this case were aware of his continued complaints of eye irritation well after the event or that they were personally involved in the denial of his subsequent requests for care.[1]

It is thus **RECOMMENDED** that Plaintiff's Eighth Amendment claim for denial of medical care against **Lt. Woodson**, **Sergeant Johnson**, **Officer Jackson**, and the **Jane Doe nurses** be **DISMISSED**, without prejudice, for failure to state a claim.

3. Eighth Amendment Claims against Defendants Trimble & Ivey

---

[1] Plaintiff does not allege that the he was denied subsequent care by the same "Jane Doe" nurses who first evaluated his symptoms. He alleges that he saw "medical staff" in October of 2014 and was denied sick calls by "medical staff" thereafter.

6

Plaintiff also attempts to bring Eighth Amendment claims against Unit Manager Trimble and Deputy Warden Ivey based on their refusal to grant Plaintiff protective custody. There is an Eighth Amendment right "to be protected from the constant threat of violence and physical assault by other inmates." *Zatler v.Wainwright*, 802 F.2d 397, 400 (1986). However, a prisoner has no constitutional right to be placed into protective custody simply because he requests such confinement. *Jolly v. Van Peavy*, 5:12-CV-241, 2012 WL 4829269, at *3 (M.D. Ga. Aug. 30, 2012) adopted by, 5:12-CV-241 MTT, 2012 WL 4829515 (M.D. Ga. Oct. 10, 2012). Prison officials violate the Eighth Amendment only if they are deliberately indifferent to a substantial risk of harm to an inmate. *See Farmer v. Brennan*, 511 U.S. 825 (1984).

Here, Plaintiff has simply not shown that the defendants were made aware of a "substantial risk of serious harm." Plaintiff allegedly told prison officials that he feared being confined with an inmate that was "noted to be threat to the safety of the safety and security of the institution." Plaintiff did not inform the defendants of any specific threat or risk of injury. Nor does he allege that he was ever threatened or harmed by his roommate.

It is therefore **RECOMMENDED** that Plaintiff's Eighth Amendment claims against **Unit Manager Trimble** and **Deputy Warden Ivey** be **DISMISSED**, without prejudice, for failure to state a claim.

4. First & Fourteenth Amendment Claims against Defendants Trimble & Hill

Plaintiff has also brought First and Fourteenth Amendment claims against Unit Manager Trimble based on his (1) failure to move Plaintiff to the appropriate phase of the Tier II program and (2) failure to provide Plaintiff with the requisite classification review. When reading Plaintiff's allegations liberally and in his favor, the undersigned finds them sufficient to allow First Amendment retaliation and Fourteenth Amendment due process claims against **Deputy Warden**

7

**Trimble** to go forward for further factual development.

Plaintiff also appears to allege that Deputy Warden Hill assigned him to the Phase I unit (1) in retaliation for his filing an institutional grievance and (2) without a "face-to-face" hearing. Neither of these allegations is sufficient to state a claim.

To state a cognizable retaliation claim, a prisoner must "come forward with more than 'general attacks'" on a prison official's motivations. *Robinson v. Boyd*, No. 5:03CV25, 2005 WL 1278136 at *3 (N.D. Fla. May 26, 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)). The complaint must allege an actual causal connection between the prisoner's protected conduct and the defendant's action. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). Here, Plaintiff alleges that Hill assigned him to Phase I the day after he filed a grievance against other prison officials. Plaintiff does not allege facts showing that Hill had personal knowledge of his grievance when he assigned Plaintiff or that he conspired with other prison officials to retaliate against Plaintiff. In the absence of such facts, Plaintiff has not stated a retaliation claim.

Plaintiff's allegation that Defendant Hill changed his classification or placement without having a "formal face-to-face review" similarly fails to allege a due process violation. Plaintiff "has no constitutionally protected liberty interest in being classified at a certain security level." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008). Nor is he constitutionally entitled to a hearing prior to every change in his security classification. *Id.* The decision that an inmate poses a security threat and should be placed in administrative segregation is subject to limited procedural safeguards. *See Brown v. Plaut*, 131 F.3d 163, 170 (D.C. Cir. 1997); *Hewitt v. Helms*, 459 U.S. 472, 472 (1983). In such cases, an inmate need only "receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476.

Here, Plaintiff alleges that he was not allowed a "face-to-face" classification hearing as is required by the prison's standard operating procedure. If these allegations are true, the procedures employed in this case may have in fact run afoul of the prison's standard operating procedures. However, Plaintiff's allegations do not show that he was also deprived of the minimum notice and opportunity to respond guaranteed by the Due Process Clause. *See Daker v. Chatman*, 1:03CV02481RWS, 2007 WL 4061961, at *5 (N.D. Ga. Oct. 31, 2007) (rejecting contention that failure to provide inmate with a direct appeal as required in SOP is a constitutional violation). Plaintiff tells the Court nothing about how he was notified of his classification change, and it appears that he was given an opportunity to respond.

It is therefore **RECOMMENDED** that Plaintiff's First and Fourteenth Amendment claims against **Deputy Warden Hill** be **DISMISSED**, without prejudice, for failure to state a claim.

5. First Amendment Claim against Deputy Warden Ivey

Plaintiff next claims that Deputy Warden Ivey has violated his First Amendment rights by restricting Plaintiff's receipt and possession of pictures, books, newspapers, and magazines in the Phase II unit. The First Amendment does of course "protect the right to receive and possess newspapers and similar publications." *O'Connor v. Carnahan*, no. 3:09cv224, 2012 WL 2201522 at *15 (N.D. Fla. March 27, 2012) (citing *Beard v. Banks*, 548 U.S. 521, 543 (2006) (J. Stevens, dissenting)). These rights, however, must be "balanced against prison security and administrative concerns." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 84–93).

At this early stage, the undersigned cannot yet determine how Defendants will justify or explain the alleged interference with Plaintiff's First Amendment rights. Plaintiff's claim against **Deputy Warden Ivey** must therefore be allowed to go forward.

6. First and Fourteenth Amendment Claims against Warden Sellers

9

Plaintiff finally asserts claims against Warden Sellers for his failure "to correct the misconduct" of his subordinates and depriving Plaintiff of "his right to seek redress from the prison through use of the prison grievances system." In his Complaint, Plaintiff alleges that he wrote and personally spoke to Warden Sellers after his successful classification appeal and return to Phase II. At that time, Warden Sellers assured Plaintiff that he had spoken to Unit Manager Trimble, and Trimble was going to move him. Trimble apparently did not move Plaintiff. Plaintiff thus filed a grievance, and received no response from Warden Sellers. Based on this, the undersigned presumes that Plaintiff seeks (1) to hold Warden Sellers responsible for Trimble's alleged Fourteenth Amendment violations and (2) to state a First Amendment claim against Warden Sellers for his failure to respond to his grievance.

Plaintiff's allegations - even when viewed in his favor - are not sufficient to impose liability on Warden Sellers. A prison warden cannot be held liable, under § 1983, for the unconstitutional acts of his subordinates absent evidence of a causal link between the warden and the alleged constitutional deprivation. *Averhart v. Warden*, --- F. App'x ----, 2014 WL 5394548, at* 1 (11th Cir. 2014); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004). Here, Plaintiff's allegations fail to demonstrate this causal link. The Complaint alleges that Warden Sellers did respond after he spoke to Plaintiff about his return to Phase II and believed Trimble was going to move Plaintiff. There is nothing in the Complaint to suggest that Warden Sellers was personally aware that Trimble did not move Plaintiff or thereafter denied him due process. Sellers' failure to respond to Plaintiff's grievance, standing alone, is not sufficient to state a claim. *See Grinter v. Knight*, 532 F.3d 567 (6th Cir.2008); *Shehee v. Luttrell*,199 F.3d 295, 300 (6th Cir.1999).

Plaintiff's First Amendment right to petition for a redress of his grievances was likewise not compromised by Warden Allen's failure to respond to his grievance. *See Flick v. Alba*, 932

10

F.2d 728, 729 (8th Cir. 1991) (per curiam). *See also, Hornsby v. Jones*, 188 F. App'x 684, 690 (10th Cir. June 26, 2006) (unpublished) (inmate's right to petition for a redress of grievances is not "*per se* compromised by the prison's refusal to entertain his grievances"). A prisoner has no constitutionally guaranteed right to participate in prison grievance procedures. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989); *Bingham v. Thomas*, 654 F.3d 1171, (11th Cir. 2011). *See also, Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("[t]here is no legitimate claim of entitlement to a grievance procedure")).

It is therefore **RECOMMENDED** that Plaintiff's claims against Warden Sellers be **DISMISSED** without prejudice.

## IV.     Conclusion

For those reasons stated herein, Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2) is **GRANTED**, but his motion for court-appointed counsel (Doc. 3) is **DENIED**. The undersigned also finds that Plaintiff's allegations are sufficient to allow claims against Defendants **Woodson**, **Johnson**, **Jackson**, **Trimble**, and **Ivey** to go forward for further factual development. It is thus **ORDERED** that service be made on these defendants and that they file an Answer, or such other response as may be appropriate under the Federal Rules of Civil Procedure, § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

It is **RECOMMENDED** that all other parties and claims be **DISMISSED**, as discussed herein, without prejudice. *See* 28 U.S.C. § 1915A(b)(1). Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file

written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been

served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained,

INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

In accordance with the Prison Litigation Reform Act, Plaintiff's custodian is directed to remit to the Clerk of this Court each month twenty percent (20%) of the preceding month's income credited to Plaintiff's inmate account until the $350.00 filing fee has been paid in full, provided the amount in the account exceeds $10.00.   Transfers from Plaintiff's account shall continue until the entire filing fee has been collected, notwithstanding the earlier dismissal of Plaintiff's lawsuit.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

If Plaintiff is hereafter released from custody, he shall remain obligated to pay any remaining balance due of the above filing fee. Collection from Plaintiff of any balance due by any means permitted by law is hereby authorized in the event Plaintiff fails to remit payment.

**SO ORDERED**, this 28th day of April, 2015.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge